IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

GREGORY THOMAS,

                Plaintiff,

                                                   Civil Action No.
      v.                                            5:08-CV-0318  (DEP)

JAMES O'BRIEN, Syracuse Police Officer,
OFFICER DADEY, OFFICER CUNNINGHAM,
and SGT. RATHBUN,

                Defendants.

_____

APPEARANCES:

| FOR PLAINTIFF: | OF COUNSEL: |
|---|---|
| HINMAN, HOWARD LAW FIRM<br>P.O. Box 5250<br>80 Exchange Street<br>700 Security Mutual Building<br>Binghamton, NY 13902-5250 | PATRICK J. MAY, ESQ. |
| FOR DEFENDANTS: | |
| HON. MARY ANNE DOHERTY<br>CORPORATION COUNSEL<br>233 East Washington Street<br>Room 301 City Hall<br>Syracuse, NY 13202 | JAMES P. McGINTY, ESQ.<br>Assistant Corporation Counsel |

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

DECISION AND ORDER

Plaintiff Gregory Thomas, a federal prison inmate currently serving a

twenty-four and one-third-year sentence from this court for conspiring with others to engage in a pattern of racketeering activity, has commenced this action pursuant to 42 U.S.C. § 1983 against four members of the Syracuse City Police Department alleging deprivation of his civil rights. In his complaint, plaintiff claims that during the course of an arrest on April 14, 2005 the defendants violated his constitutional rights by subjecting him to an unlawful search and seizure, false arrest, and use of excessive force.

This case is now trial ready.[1] The plaintiff, who has been assigned counsel to represent him at trial *pro bono,* requests that the court issue the necessary directives to require the United States Bureau of Prisons ("BOP") and/or the United States Marshals Service ("USMS") to produce him in person for trial in Syracuse, New York, and to transport and house him during the course of the trial. That request is opposed by both the defendants and the United States Attorney for the Northern District of New York, whose input on behalf of the BOP and the USMS was solicited by the court.

For the reasons set forth below, I find that the court possesses the

---

[1] The matter is before me on consent of the parties, pursuant to 28 U.S.C. § 636(c). *See* Dkt. No. 77.

power to issue the directives necessary to procure the plaintiff's presence at trial. Nonetheless, after weighing the relevant factors informing the decision of whether to exercise that authority, including principally the potential security concerns and costs associated with plaintiff's presence at trial and the availability of live videoconferencing as a suitable alternative, I have concluded that plaintiff's request should be denied.

I.  BACKGROUND

On December 19, 2006, following a fifteen-day trial, plaintiff was found guilty of conspiring with others for the purpose of engaging in a pattern of racketeering activity in violation of 18 U.S.C. § 1962(d). *See United States v. Applins, et al.,* No. 5:05-CR-00322 (NAM), Dkt. No. 336. The conviction was subsequently affirmed on appeal to the Second Circuit Court of Appeals.[2] *United States v. Applins, et al.*, 637 F.3d 59 (2d Cir. 2011). The indictment forming the basis for the plaintiff's conviction alleged that he and others who were members of a gang, known as the Elk Block, engaged in fifty-four racketeering acts, including multiple

---

[2]     Seven of the defendants convicted at trial, including Thomas, appealed their convictions as well as their sentences. *Applins*, 637 F.3d at 62. The Second Circuit affirmed the judgments, including the sentences imposed, except as to plaintiff's sentence. With regard to the plaintiff, the court remanded the matter to the district court for resentencing. *Id.* at 84. On remand Thomas, who originally received a sentence of 360 months, was sentenced to a reduced term of imprisonment of 292 months. *Id.* at Dkt. Nos. 520, 728. Thomas' appeal of the amended judgment is currently pending before the Second Circuit. *See id.* at Dkt. No. 729 and Dkt. Entry of Oct. 28, 2011.

instances of narcotics possession and distribution, firearms possession, shootings, and murder, to promote their unlawful activities and discourage competition from rival gangs. *See Applins*, 637 F.3d at 63.  Evidence adduced at trial established that Thomas engaged in daily crack-cocaine sales in the gang's territory and that when violence began to escalate between the Elk Block members and another gang, Thomas secured and carried a gun. *Id.* at 79-80.  The evidence also revealed that after Thomas was shot by a rival gang member, he spoke with another Elk Block member about retaliating and shooting someone from the rival group. *Id.* Addressing the plaintiff's appeal of his conviction, the Second Circuit concluded that there was "more than sufficient evidence" introduced at trial to establish that Thomas was involved in a conspiracy and a racketeering enterprise to conduct and participate in the conduct of the gang's affairs. *Id.* at 80.

Thomas is currently serving his sentence at the Canaan United States Penetentiary ("USP Canaan"), located in Waymart, Pennsylvania, the closest BOP facility to the United States Courthouse in Syracuse, New York, at a distance of approximately one-hundred-thirty miles. *See* Straesser Decl. (Dkt. No. 86-1) ¶¶ 3, 7.  USP Canaan is a high security institution.  Straesser Decl. (Dkt. No. 86-1) ¶ 7.  The plaintiff has been

designated by the BOP as falling within the "IN" custody classification, the second highest security level that can be assigned to a federal inmate, and is classified as being at a "HIGH" security level within the "IN" custody category. *Id.* at ¶¶ 7-9. According to information available on the BOP website, plaintiff's current expected release date is June 5, 2029. *See* http://www.bop.gov/iloc2/InmateFinderServlet?Transaction=IDSearch&needingMoreList=false&IDType=IRN&IDNumber=13366-052&x=69&y=10 (site last visited November 8, 2011) (screen shot attached).

Thomas commenced this action on or about March 12, 2008 while incarcerated, asserting claims stemming from his arrest on April 14, 2005 in the City of Syracuse for loitering and drug possession.[3] In his complaint, as amended on June 2, 2008, plaintiff alleges that defendants subjected him to an unlawful search and seizure, false arrest, and the use of excessive force during the course of the incident. Dkt. No. 14. In response to defendants' motion for summary judgment seeking dismissal of plaintiff's claims on the merits and also based upon qualified immunity, Chief District Judge Norman A. Mordue issued a decision dated August 9, 2010 dismissing plaintiff's false arrest claim, but otherwise denying the

---

[3] This case was originally filed in the United States District Court for the Middle District of Pennsylvania, but was transferred to this court on or about March 19, 2008. Dkt. No. 9.

motion and deeming the case trial ready as of September 30, 2010.  Dkt. No. 43.

Following the issuance of Chief Judge Mordue's order the plaintiff, who at the outset of the case was granted *in forma pauperis* status, was assigned *pro bono* counsel, and the matter was scheduled for trial beginning on July 11, 2011.  Before that date, plaintiff requested the issuance of a subpoena directing that the USMS transport him to the United States Courthouse in Syracuse, New York for trial, without the requirement that he prepay the costs associated with producing him.  The trial was subsequently adjourned without date, and briefing addressing the issue was invited from all interested parties, including the plaintiff, the defendants, the BOP, the USMS, and the United States Attorney for the Northern District of New York.  Dkt. No. 84.  That briefing is now complete, and oral argument has been heard regarding the matter.

II.   DISCUSSION

Plaintiff's application draws into question the court's authority to order his production at trial and to provide not only for his security while in attendance, but additionally for his custody and care from the time of his production until his return to BOP custody.  The request also potentially presents the question of who must bear the costs associated with such an

order, if entered, although I have opted not to address this issue given my ultimate conclusion with regard to plaintiff's application.

### A. The Court's Authority to Order Plaintiff's Production At Trial

The court's authority to direct the production of the plaintiff at trial is well-established, and seemingly non-controversial. Under 28 U.S.C. § 2241(c)(5), a court is empowered to secure the presence of a prison inmate through the issuance of a writ of habeas corpus *ad testificandum* when "[i]t is necessary to bring him [or her] into court to testify or for trial." *Barnes v. Black*, 544 F.3d 807, 809 (7th Cir. 2008); *Muhammad v. Warden*, *Baltimore City Jail*, 849 F.2d 107, 114 (4th Cir. 1988). Such a writ must be directed to "the person having control of the person detained[,]", 28 U.S.C. § 2243;[4] *Pennsylvania Bureau of Corrs. v. United States Marshals Serv.*, 474 U.S. 34, 38, 106 S. Ct. 355, 359 (1985); *see also Barnes*, 544 F.3d at 809; *Barnett v. Moon*, No. 89-CV-262, 1993 WL 133725, at * 1 (N.D.N.Y. Apr. 23, 1993) (McAvoy, C.J.)*,* and may be

---

[4]   Section 2243 provides, in relevant part, that

> [u]nless the application for the writ and the return present only issues of law, the person to whom the writ is issued shall be required to produce *at the hearing the body of the person detained.*

28 U.S.C. § 2243 (emphasis added). This statute is thus properly directed at the custodian of the prisoner and imposes a duty on that custodian to produce the subject of the writ to the court. *Rivera v. Santirocco,* 814 F.2d 859, 862 (2d Cir. 1987).

served nationwide, regardless of whether the prisoner is housed in a federal facility or instead is in the custody of a state or local agency. *See United States v. Mauro*, 436 U.S. 340, 357-58, 98 S. Ct. 1834, 1846 (1978) (citing *Carbo v. United States*, 364 U.S. 611, 619-620, 81 S. Ct. 338, 343 (1961)); *Muhammad*, 849 F.2d at 114 (citing *Carbo*); *United States v. McGaha,* 205 F. Supp. 949, 950 (E.D. Tenn. 1962) (citing 28 U.S.C. § 2241(c)(5) and *Carbo*). In this instance, since Thomas is presently in the custody of BOP, the court is authorized to direct the BOP to produce him in Syracuse for trial.[5,6]

---

[5] From the supplemental submission of the office of the United States Attorney, it appears that the burden of compliance would fall to the USMS by virtue of an agreement between that agency and the BOP, and that if the court were to issue a writ in this case Thomas would be produced utilizing the Justice Prisoner and Alien Transportation System ("JPATS"), operated by and at the expense of the USMS. *See* Supp. Ltr. Br., dated October 5, 2011 (Dkt. No. 92) p. 1.

[6] The more challenging question concerns responsibility for providing security and taking custody of the plaintiff once he is produced for trial. In *Rivera*, the Second Circuit, discerning a statutory void in addressing who is responsible for an inmate from the time of presentment to the court pursuant to a writ until the time of remand, concluded that a district court can act pursuant to the All Writs Act, 28 U.S.C. § 1651, to fill that void. *Rivera*, 814 F.2d at 863. In that case, involving civil rights claims brought by prisoners in state custody, the court held that "[u]nder such circumstances, a federal court may use the All Writs Act as authority to order the Bureau of Prisons to house a prisoner, and the Marshals Service to transport the prisoner between the courthouse and the [Metropolitan Correctional Center], until he is remanded back into the state's custody." *Id.* at 863 (footnote omitted). Because I have decided, in the exercise my discretion, not to require that the plaintiff be produced at trial, it is unnecessary to address this issue, or the subsidiary question of whether the costs of production and housing can be taxed to any of the litigants in the case.

B.   <u>Whether to Exercise the Discretion Conferred Upon the Court</u>

Without question, the constitution guarantees prison inmates free access to the courts. *Bounds v. Smith*, 43 U.S. 817, 97 S. Ct. 1491 (1977). Notwithstanding that right of access, however, as a prison inmate the plaintiff does not enjoy a constitutional right to be physically present at the trial of his civil claim. *See Twitty v. Ashcroft*, 712 F. Supp. 2d 30, 31 (D. Conn. 2009) (collecting cases); *see also Tedder v. Odel*, 890 F.2d 210, 212 (9th Cir. 1989) (per curiam); *Hawks v. Timms*, 35 F. Supp. 2d 464, 465 (D. Md. 1999) (citing *Price v. Johnston*, 384 U.S. 266, 284-85, 68 S. Ct. 1049 (1948), *overruled on other grounds by McCleskey v. Zant*, 499 U.S. 467, 111 S. Ct. 1454 (1991)).

The decision of whether to exercise the authority, conferred by statute, to issue a writ directing that the plaintiff be brought to this jurisdiction for trial lies within the sound discretion of the trial court. *Twitty*, 712 F. Supp. 2d at 31; *Barnett*, 1993 WL 133725, at * 1; *see also Atkins v. City of New York,* 856 F. Supp. 755, 757 (E.D.N.Y. 1994) ("the decision to issue a writ of habeas corpus *ad testificandum* is committed to the sound discretion of the district court.") (citing *Haywood v. Hudson*, CV-90-3287, 1993 WL 150317, at *1 (E.D.N.Y. Apr. 23, 1993)). In assessing the plaintiff's request for a writ, the court must weigh his interest in presenting

his testimony in person against the interest of his custodian in maintaining his confinement. *Twitty*, 712 F. Supp. 2d at 32.

The decision of whether to exercise its discretion in favor of issuing a writ of habeas corpus *ad testificandum* under circumstances like those now presented implicates several relevant considerations, including

> whether the prisoner's presence would substantially further the resolution of the case, the security risks presented by the prisoner's presence, the expense of the prisoner's transportation and safekeeping, and whether the suit can be stayed until the prisoner is released without prejudice to the case asserted.

*Ballard v. Spradley*, 557 F.2d 476, 480 (5th Cir. 1977) (citing *Ball v. Wood*, 402 F. Supp. 803, 808-09 (N.D. Ala. 1975), *aff'd sub nom.*, *Ball v. Shamblin*, 529 F.2d 520 (5th Cir. 1976)). In addition to these considerations, some courts have weighed other potentially probative factors, including "the substantiality of the matter at issue", "the need for an early determination of the matter", "the probability of success on the merits",[7] "the integrity of the correctional system", and whether the plaintiff inmate is the only witness anticipated to be called on his or her behalf. *Muhammad,* 849 F.2d at 112 (citing and quoting *Stone v. Morris*, 546 F.3d

---

[7] The courts appear to be divided on the question of whether the probability of a prisoner's success on the merits is a factor for the court to consider, with some courts holding that it is not. *See, e.g., Jackson v. Bennett*, No. 01 CIV 8971(NRB), 2002 WL 126679, at * 2 (S.D.N.Y. Jan. 30, 2002) (citing *Ballard*, 557 F.2d at 480-81).

10

730, 735-36 (7th Cir. 1976)).  In balancing the plaintiff's interest in attending the trial against the government's interest in maintaining his imprisonment, the court should also consider available alternatives to producing the prisoner at trial, including, among other things, presenting his testimony via video.[8]  *See Rivera*, 814 F.2d at 864, n.8; *Johnson v. Toffey*, No. 9:01-CV-1907, 2011 WL 3841540, at *4 (N.D.N.Y. Sept. 9, 2011) (D'Agostino, D.J.).

Undeniably, certain of the enumerated factors weigh in favor of requiring the plaintiff's presence at trial.  The importance of plaintiff's ability to pursue a civil rights complaint based upon actions surrounding his arrest cannot be trivialized.  The court is likewise cognizant of the impact of presenting live testimony, especially where, as here, the trial is likely to turn on issues of credibility.  *Hawks*, 35 F. Supp. 2d at 467 (recognizing that the fact that credibility is a key issue does not

---

[8]      Significantly, while expressing a preference for in-person participation, the Federal Rules of Civil Procedure provide that "[f]or good cause in compelling circumstances and with appropriate safeguards, the court may permit testimony in open court by contemporaneous transmission from a different location." Fed. R. Civ. P. 43(a). Remote transmission, however, seems to be regarded as the exception and not the rule. *See* Fed.R.Civ. P. 43 advisory committee's note on 1996 amendments ("The importance of presenting live testimony in court cannot be forgotten. The very ceremony of trial and the presence of the factfinder may exert a powerful force for truth telling. The opportunity to judge the demeanor of a witness face-to-face is accorded great value in our tradition."); *see also Thorton v. Snyder*, 428 F.3d 690, 698 (7th Cir. 2005).

11

necessarily require prisoner's presence, but is an important factor that must be considered) (quoting *Latiolais v. Whitley*, 93 F.3d 205, 207 (5th Cir. 1996) (other citations omitted)); *see also Twitty*, 712 F. Supp. 2d at 33; *Thornton*, 428 F.3d at 697.  In his submission to the court, Thomas has argued that his presence is necessary because he will be the only witness called to testify on his behalf.  Plaintiff's Mem. (Dkt. No. 87) p. 5.  Here, the preference for live testimony, the fact that he will be the only witness for his case, and the credibility issues that are likely to arise at trial are factors weighing in the plaintiff's favor.

Addressing another of the relevant factors, I conclude that under the circumstances presented it does not appear that a stay of the litigation in order to allow plaintiff's live testimony to be presented following his release would offer a suitable resolution.  Plaintiff's current earliest expected release date is more than seventeen years away.  This alternative would therefore neither be just nor promote the interests of the parties or judicial economy.

Turning to the arguments against issuing the requested writ, the United States opposes the request primarily on two grounds – cost and security concerns.  In this regard, the USMS has estimated that the expense of transporting and housing of plaintiff during the trial will be

$9,180, *see* Dkt. No. 49, an amount which, though not in any sense shocking, is nonetheless not insignificant, particularly given ever-shrinking budgets for governmental agencies such as the USMS.[9]  While the costs, or lack of funds, alone may not be sufficient to justify denying a plaintiff the opportunity to appear at trial, *see Hawks*, 35 F. Supp. 2d at 468 (quoting *Greene v. Prunty*, 938 F. Supp. 637, 640 (S.D. Cal. 1996)), the expense combined with security concerns may warrant denial of a plaintiff's application, *Twitty*, 712 F. Supp. 2d at 33 ("expense and security concerns outweigh the plaintiff's interest in physically appearing at trial, particularly in light of the reasonable alternative, that of having the plaintiff appear by videoconference").

The most compelling consideration militating against requiring that the plaintiff be produced for trial is concern for security.  As a general

---

[9]     That estimate is comprised of 1) $1500, representing the mileage expense and cost of personnel requirements for transporting the plaintiff from USP Canaan to Syracuse and returning him following the trial; 2) the expense of housing the plaintiff at a local jail facility for four days during the trial, in the estimated amount of $480; and 3) the cost of providing security for lodging and court production of the plaintiff, estimated at $7200. Dkt. No. 49.  With an eye toward reducing this anticipated expense, I have considered the alternative of conducting a trial at the United States Courthouse in Binghamton, New York.  If I were to do so, this would eliminate the requirement and cost of housing plaintiff in Syracuse, but USMS deputies would be required to transport the plaintiff twice daily for approximately sixty miles each way between USP Canaan and the United States Courthouse in Binghamton.  While at first blush this may appear to be an appealing option, I have rejected it based upon my determination that the cost savings does not outweigh the inconvenience and increased expense to defendants and, more importantly, the enhanced security concerns associated with transporting the plaintiff twice daily over a sixty-mile distance.

13

proposition, I take note of the fact that "'[w]ritting prisoners to a distant court entails costs and even danger . . .'" *Barnes v. Black*, 544 F.3d 807, 810 (7th Cir. 2008) (citation omitted). In this case, the inherent danger present in every case is heightened by the fact that Thomas, as was previously discussed, is serving a sentence of imprisonment exceeding twenty-four years based upon his participation in gang-related activity involving weapons, drugs, and violence; he was convicted upon evidence that he was a violent, gun-carrying drug dealer whose activities were aimed at furthering the interests of the Elk Block gang. Thomas has been designated by the BOP as presenting a high level security risk, which makes him ineligible for work details or programs outside of the secure perimeter of the institution in which he is housed. *See* Straesser Decl. (Dkt. No. 86-1) ¶¶ 4-9. USP Canaan, where plaintiff is currently housed, is a high security institution, and there is no other such institution closer to Syracuse. *Id.* at ¶ 7. The security risks associated with transporting and housing plaintiff locally coupled with the expense involved, when considered in light of the availability of a suitable alternative, as set forth below, lead me to conclude that it would be an improvident exercise of my discretion to require that the plaintiff be produced for trial.

Addressing the issue of whether a suitable alternative to plaintiff's in-

person testimony at trial exists, the BOP has informed the court that due to the risks associated with transporting the high security inmates who are housed at USP Canaan, that facility possesses the necessary videoconferencing technology to permit the plaintiff's participation in the trial from that remote location; the court also has the capacity to accommodate such an arrangement.

The court recognizes that "virtual reality is rarely a substitute for actual presence and . . . even in the age of advancing technology, watching an event on the screen remains less than the complete equivalent of actually attending it."[10]  *Thornton*, 428 F.3d at 697 (quoting *United States v. Lawrence*, 248 F.3d 300, 304 (4th Cir. 2011)) (alteration

---

[10]  "The use of video conferencing in judicial proceedings was further enhanced with the enactment of the Prison Litigation Reform Act ["PLRA"] of 1996[, 42 U.S.C. § 1997e]." *Edwards v. Logan*, 38 F. Supp. 2d 463, 466 (W.D.Va. 1999).  The PLRA provides, in relevant part, that

> [t]o the extent practicable, in any action brought with respect to prison conditions in Federal court pursuant to section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility, pretrial proceedings in which the prisoner's participation is required or permitted shall be conducted by telephone, video conference, or other telecommunications technology without removing the prisoner from the facility in which the prisoner is confined.

42 U.S.C. § 1997e(f)(1).  While relating to pre-trial proceedings, this provision suggests a Congressional preference for the reduction of the costs and administrative burdens of prisoner litigation, which by logical extension would lead to the conclusion that use of video conferencing in place of an inmate's appearance at trial is a viable alternative for saving costs in appropriate circumstances.  *See Edwards*, 38 F. Supp. 2d at 466 and n.3.

15

omitted).  The use of video conferencing technology to permit a prisoner plaintiff's participation in a trial is not only a potential alternative falling within the scope of those suggested by the Second Circuit in *Rivera*, but appears to present an option which has been and continues to gain growing acceptance.  *Edwards*, 38 F. Supp. 2d at 466; *see, e.g.,Thornton*, 428 F.3d at 698 (affirming trial court's exercise of discretion finding good cause to conduct inmate's civil rights trial via video conference); *Lopez v. NTI, LLC*, 748 F. Supp. 2d 471, 479-80 (D.Md. 2010) (allowing video conferencing of foreign resident plaintiff's testimony upon plaintiffs' request) (citing cases); *Twitty*, 712 F. Supp. 2d at 33 (finding expense and security concerns justified presenting inmates plaintiff's appearance by video conference); *United States v. Beaman*, 322 F. Supp. 2d 1033, 1034-35 (D.N.D. 2004) (permitting live video testimony of government witness at criminal trial).

    In this instance, both USP Canaan and the court have the capability of connecting the plaintiff and the court via live video link, which would allow not only for his virtual presence at trial but his live, albeit remote, testimony.  While surely not the equivalent of plaintiff's actual presence, this alternative will sufficiently allow the plaintiff to participate and to testify live, and the jury to assess his demeanor and credibility.  I note, moreover,

16

that the plaintiff has been appointed *pro bono* counsel who will be present in the courtroom on his behalf, and providing him with appropriate opportunities to consult with counsel during the trial will further advance the plaintiff's interests in this matter.

In sum, I conclude that the use of videoconferencing technology at USP Canaan, with the provision of an additional telephone link or other appropriate means to permit periodic private consultations between Thomas and his lawyer, presents a reasonable alternative to plaintiff's presence at court and strikes a proper balance between plaintiff's interests and the countervailing concerns raised relating to cost and security associated with producing the plaintiff at trial.  *See Twitty*, 712 F. Supp. 2d at 33.

III.    SUMMARY AND ORDER

While as a prison inmate the plaintiff is not wholly divested of his right of access to the courts, he has no constitutional right to be present at a civil trial to be held with respect to his pending civil rights claims. Although I find that I have the discretion to issue a writ of habeas corpus *ad testificandum* to the BOP to require that he be produced at trial, I conclude that the relevant factors to be considered in deciding whether to exercise that discretion, including notably the costs arising out of such an

order together with security concerns associated with plaintiff's in-person participation, outweigh the need for his presence at trial, particularly given the existence of an acceptable alternative means of presenting his testimony at trial and permitting him to observe the trial proceedings. Accordingly, it is hereby

ORDERED as follows:

1) Plaintiff's request for the issuance of a writ of habeas corpus *ad testificandum* requiring his production at trial and for entry of an order under the All Writs Act requiring the USMS to house and transport him during the course of his civil trial in this matter is DENIED.

2) The court will confer with counsel for the parties and will schedule a trial in this matter to be held in the near future.

3) At that trial plaintiff will be permitted to present his testimony, and to witness the trial via video link, and in addition arrangements will be made for him to confer privately with his counsel at appropriate intervals during the course of the trial.

David E. Peebles
U.S. Magistrate Judge

Dated: November 8, 2011
Syracuse, NY

